**SECOND DIVISION**
**BARNES, P. J.,**
**MCFADDEN and MCMILLIAN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**March 21, 2013**

# In the Court of Appeals of Georgia

A12A2348. LAUDERBACK v. THE STATE.

MCMILLIAN, Judge.

Kenneth Lauderback was convicted by a jury of one count of reckless driving. He appeals following the denial of his motion for new trial, contending that the trial court erred in its charge to the jury, by denying his demurrer to the indictment, and that the evidence was insufficient. Having considered his claims of error, we now affirm.

Construed to support the verdict, as we must on appeal, the evidence presented at trial showed that on September 5, 2011, Lauderback was driving a Toyota truck on Upchurch Road[1] in Henry County; Lauderback's three sons were riding as passengers in the truck. A small dog had gotten off its leash and was running into yards and

---

[1] Upchurch Road is a two-lane road located in Henry County.

along the side of and into the road, and a young boy and his neighbor, Vickie Moore, were trying to catch the dog. Motorists traveling in both directions began stopping and exiting their vehicles to help catch the dog, and by the time Lauderback came upon the scene, both lanes were blocked except for the gap between the two vehicles that were facing each other in opposite lanes. According to the State's witnesses, Lauderback was weaving through the vehicles without stopping or slowing down, causing him to almost sideswipe one of the parked vehicles. Moore was bending down to pick up the dog and did not see Lauderback's car coming her way, and one of the motorists who had stopped to help pulled her out of the way so she would not be hit by Lauderback's vehicle. Moore said she then implored Lauderback to stop but he drove around her and "gave [her] a "gesture." The commotion frightened the dog and it got away from the woman and ran up the hill, where it was struck and injured by Lauderback's vehicle.

Lauderback did not stop after he hit the dog, and one of the motorists at the scene got back into his vehicle and followed Lauderback. According to that witness, who obtained Lauderback's tag number and provided it to the police, Lauderback did not appear to apply his brakes after he hit the dog and did not appear to stop at the stop sign at the top of the hill.

Lauderback's son, who was 17 years old at the time of trial, testified in his father's defense. He said that his father did stop and slow down when he came upon the scene, but then proceeded to drive cautiously through when it appeared clear to do so. The son also testified that he did not realize the dog had been hit.

Lauderback also testified at trial and said that he did not realize what was going on and thought at first that several cars had broken down in the road. He said he did stop when he came to the parked cars, and then proceeded to go "safely" around the vehicles. He denied that he was driving recklessly or with disregard for the safety of others, and said that he did not see Moore motioning him to stop until he was already driving past her. He also denied making any sort of gesture to Moore.

1. Contrary to Lauderback's fifth enumeration of error, the evidence recited above as well as other evidence adduced at trial was sufficient to find him guilty of the offense of reckless driving as charged. It was for the jury to decide which version of events to believe, and the fact that the jury chose to believe the State's witnesses does not render the evidence insufficient. *Maloney v. State*, 317 Ga. App. 460, 461 (731 SE2d 133) (2012); *Banks v. State*, 230 Ga. App. 881, 882 (1) (497 SE2d 821) (1998). This enumeration thus presents no basis for reversal. *Winston v. State*, 270 Ga. App. 664, 665 (1) (a) (607 SE2d 147) (2004).

2. Lauderback also contends that the trial court erred by denying his oral demurrer to the indictment, which was asserted after the jury was selected but before trial began. Lauderback was charged via accusation in the language of the reckless driving statute.[2] At trial, he asserted that the failure to charge the particular manner in which the crime was committed rendered the accusation fatally deficient. The trial court initially took the demurrer under advisement and subsequently ruled that Lauderback's challenge to the indictment was in the nature of a special demurrer and thus was untimely.

On appeal, Lauderback again complains that the accusation was fatally defective because it did not include any particularized facts and also points out that the accusation failed to include an allegation of the date as a material element of the offense.[3] Regardless of how Lauderback frames his argument, the gist of his challenge is that the accusation did not provide him with sufficient information to

---

[2] The accusation charged Lauderback "with the offense of RECKLESS DRIVING ([OCGA §] 40-6-390), for that the said accused, did in HENRY COUNTY, Georgia, on or about September 05, 2011, unlawfully drive a vehicle in reckless disregard for the safety of persons or property, contrary to the laws of this state, the good order, peace and dignity thereof."

[3] The accusation charged that Lauderback drove recklessly "on or about September 5, 2011."

form his defense, which is a challenge that must be brought by way of special demurrer. "If a defendant decides to challenge the validity, specificity or form of an indictment, he or she must file a general and/or special demurrer seeking to quash the indictment. A general demurrer challenges the *validity* of an indictment by asserting that the *substance* of the indictment is legally insufficient to charge any crime." (Footnote omitted; emphasis in original.) *State v. Wilson*, 318 Ga. App. 88, 91 (1) (732 SE2d 330) (2012). "'The true test of the sufficiency of the indictment to withstand a general demurrer . . . is found in the answer to the question: Can the defendant admit the charge as made and still be innocent? If he can, the indictment is fatally defective'. . . . *Adams v. State*, 293 Ga. App. 377, 381 (3) (667 SE2d 186) (2008)." *State v. Hood*, 307 Ga. App. 439, 440-441 (706 SE2d 566) (2010). On the other hand, "a special demurrer merely objects to the *form* of an indictment and seeks more information or greater specificity about the offense charged. [Cits.]" (Emphasis in original.) *Wilson*, 318 Ga. App. at 92 (1). And indictments that do not allege a specific date on which the crime was committed are not perfect in form and are subject to a timely *special* demurrer. *Hood*, 307 Ga. App. at 441. Further, pursuant to OCGA § 17-7-110, special demurrers must be filed within ten days after the date of arraignment, unless the time for filing is extended by the court. *Wilson,* 318 Ga.

5

App. at 92 (1). E.g., *Stinson v. State*, 279 Ga. 177, 180 (2) (611 SE2d 52) (2005); *Delaby v. State*, 298 Ga. App. 723, 724 (681 SE2d 645) (2009). Thus, the trial court did not err by finding that Lauderback waived his right to challenge the indictment by failing to timely file a written special demurrer. Accordingly, this enumeration presents no basis for reversal.

3. Lauderback next argues that the trial court should have given his requested charge on his sole defense of accident.

The defense of accident applies "where it satisfactorily appears there was no criminal scheme or undertaking, intention, or criminal negligence." OCGA § 16-2-2. "But, a charge on accident is not authorized when the 'accident' occurs as the defendant is driving recklessly. *Black v. State*, 222 Ga. App. 80, 81-82 (2) (473 SE2d 186) (1996); *Helton v. State*, 216 Ga. App. 748, 748-749 (455 SE2d 848) (1995) (defendant who was driving recklessly to evade police was not entitled to a charge on accident)." *Dryden v. State,* 316 Ga. App. 70, 77 (6) (728 SE2d 245) (2012). *Davis v. State*, 301 Ga. App. 484, 487 (2) (687 SE2d 854) (2009). Moreover, "the defense of accident is an affirmative defense, which is a defense that admits the doing of the act charged but seeks to justify, excuse, or mitigate it. Thus, if a defendant does not admit to committing any act which constitutes the offense charged, [he] is not entitled

6

to a charge on the defense of accident." (Punctuation and footnotes omitted.) *Sevostiyanova v. State*, 313 Ga. App. 729, 736 (9) (722 SE2d 333) (2012). As stated above, Lauderback testified at trial and denied that he drove recklessly or with any disregard for the safety of other persons or property. Thus, the trial court did not err by refusing to give his requested charge on accident. *Davis*, 301 Ga. App. at 487 (2); *Winston v. State*, 270 Ga. App. at 670-671 (5).

4. Lauderback next contends that the trial court erred by refusing to give his requested charges on "bare suspicion" and "stopping, standing, or parking in the roadway."

(a) First, the alleged criminal conduct of the other persons present at the scene was irrelevant. "The issue . . . is not whether [the other motorists] were [stopping, standing, or parking in the roadway], but whether [Lauderback] drove recklessly . . . ." *Winston*, 270 Ga. App. at 666 (1) (d). Thus, the trial court did not err by refusing to give this requested charge.

(b) The trial court also did not err by refusing to give Lauderback's requested charge on bare suspicion. The evidence here, including the testimony of the two eyewitnesses, raised more than a mere suspicion of guilt. "A defendant is not entitled to charge on bare suspicion where the evidence raises more than a mere suspicion of

7

his guilt." (Punctuation and citations omitted.) *Sherman v. State*, 302 Ga. App. 312, 314 (3) (690 SE2d 915) (2010). Further, [i]t is a fundamental rule in Georgia that jury instructions must be read and considered as a whole in determining whether the charge contained error. The failure to give requested instructions in the exact language requested, where the charge given substantially covers the same principle, is not grounds for reversal. . . . *Carson v. State*, 259 Ga. App. 21, 24 (5) (576 SE2d 12) (2002)." *Singleton v. State*, 297 Ga. App. 452, 454 (2) (677 SE2d 348) (2009). Here, the transcript reveals that the trial court completely and accurately instructed the jury on presumption of innocence, burden of proof and reasonable doubt. Because the charge as a whole covered the principles of law embodied in the bare suspicion charge, the trial court did not err by refusing Lauderback's request to give this charge. Id.; *Sherman*, 302 Ga. App. at 314 (3).

5. Lauderback also contends that the trial court's instruction on reckless driving and reckless disregard failed to sufficiently distinguish between civil and criminal liability and therefore allowed him to be convicted on a "lower level" of criminal intent.

The transcript shows that during its initial charge, the trial court explained to the jury that the crime of reckless driving requires a showing of criminal negligence,

but that specific intent is not required. The court then defined criminal negligence for the jury "as reckless or wanton conduct that shows an indifference to the injurious result of the negligent acts, an indifference to the safety of others, and a lack of consideration for their welfare." Following this charge, the court also instructed the jury that "[a]ny person who drives any vehicle in a reckless disregard for the safety of persons or property is guilty of the offense of reckless driving."

During its deliberations, the jury sent out a request for a definition of reckless disregard. The trial court indicated that it was inclined to give a recharge based on language in *Walden v. State*, 273 Ga. App. 707, 711 (1) (616 SE2d 462) (2005), and asked counsel if they had another suggestion or better idea. Lauderback's counsel indicated he did not know if he could provide a better definition, and after reviewing the language proposed by the trial court, stated for the record that he would let the court handle it as the court saw fit.

The trial court then gave the jury the following charge:

> There is no legal definition of just [reckless disregard] that I can read to you as if I would [be] reading from a dictionary. However, I can give you further instruction related to the charge of reckless driving. Charges of reckless driving require proof of criminal negligence defined as not merely such negligence as may render one liable for damages in a civil suit, but recklessness or carelessness of such a character []as to

9

show a disregard of consequences or a heedless indifference for the safety and rights of others who might reasonably be expected to be injured thereby.

Following this charge, and after the jury resumed its deliberations, Lauderback's counsel stated "[j]ust for the record, I want to reserve all my objections and the objection to that as being different than what reckless disregard is." On appeal, Lauderback now argues, for the first time, that the trial court's "re-charge" was flawed because it did not provide an additional instruction about what constitutes "civil negligence," omitted "thoughtless" or "utter" before "disregard, and confused the jury about the concept of "foreseeability" of the injury. Further, Lauderback contends these failures allowed the jury to convict him on a "significantly lowered" burden of proof.

Pursuant to OCGA § 17-8-58 (a) "[a]ny party who objects to any portion of the charge to the jury or the failure to charge the jury shall inform the court of the specific objection and the grounds for such objection before the jury retires to deliberate." As set forth above, Lauderback initially appeared to acquiesce in the trial court's proposed response to the jury's question. Lauderback posed an objection after the charge was given, but that objection was general and without any mention of the

specific deficiencies he now points out on appeal. Hence, Lauderback failed to preserve these objections for appellate review and is entitled to reversal only if the jury instruction constitutes "plain error." OCGA § 17-8-58 (b); *State v. Kelly*, 290 Ga. 29, 31 (1) (718 SE2d 232) (2011). *Blake v. State*, ___ Ga. ___ (Case Number S12A1852, decided March 4, 2013). And plain error will be found only if the jury instruction was erroneous; the error was obvious; the instruction likely affected the outcome of the proceedings; and the error seriously affects the failure, integrity, or public reputation of judicial proceedings. *Kelly*, 290 Ga. at 32-33 (2) (a).

Although Lauderback does not mention plain error in his brief on appeal, "we will review properly enumerated and argued claims of jury instruction error regardless of whether the appealing party specifically casts the alleged infirmity as 'plain error'[; however,] parties should be advised that the hurdle to establishing plain error is high, . . . and therefore that the failure to specifically articulate how the alleged error satisfies this high standard increases the likelihood that their claims in this regard will be rejected." Id. at 32 (1), n. 2.

Without belaboring the point, we do not believe that the trial court's recharge on criminal negligence, which was a correct statement of the law, *Walden*, 273 Ga. App. at 711 (1), was obviously erroneous because it was not as clear as Lauderback

11

now says it could have been. Further, and reviewing both the recharge and the initial charge together, we fail to see how the jury was confused to the extent that Lauderback was "convicted on a lower level of criminal intent." *Blake*, slip op. at (2); *Curry v. State*, 291 Ga. 446, 453-454 (6) (729 SE2d 370) (2012). This enumeration thus also provides no basis for reversal.

*Judgment affirmed. Barnes, P. J., and McFadden, J., concur.*